UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DORIAN BYRD,                                    :
               Petitioner,                   :      **MEMORANDUM OPINION**
                                :      **AND ORDER**
v.                                              :
                                :      23 CV 2584 (VB) / 20 CR 517-2 (VB)
UNITED STATES OF AMERICA,                       :      23 CV 2585 (VB) / 21 CR 441-2 (VB)
               Respondent.                   :
--------------------------------------------------------x

Briccetti, J.:

Petitioner Dorian Byrd, proceeding pro se, moves pursuant to 28 U.S.C. § 2255 to vacate,

set aside or correct his sentence.  Liberally construed, his claims can fairly be summarized as

follows:  (1) his conviction under 18 U.S.C. § 924(c)(1)(A)(i), (ii) for brandishing a firearm

during and in relation to a crime of violence must be vacated in light of the Supreme Court's

decision in United States v. Davis, 139 S. Ct. 2319 (2019); and (2) his attorney was

constitutionally ineffective for failing to file a notice of appeal.

For the following reasons, the motion is DENIED and the petition is DISMISSED.

## BACKGROUND

In November 2019, Byrd traveled from South Carolina to upstate New York to

participate in a home invasion robbery in Mt. Hope, New York.  Byrd and his co-conspirators

believed the home contained a large quantity of cocaine.  On the night of the robbery, November

14, 2019, Byrd and a co-conspirator entered the home wearing masks and brandishing firearms.

They tied up the occupants—an elderly couple and their teenage grandson—and ransacked the

house.  No drugs were found, but Byrd and his co-conspirator stole jewelry belonging to the

victims.  In the course of the robbery, the elderly couple was pistol-whipped.

Three months later, on February 18, 2020, Byrd and two co-conspirators traveled from South Carolina to the apartment of one of the co-conspirators in Middletown, New York.  On February 19, Byrd and his co-conspirators tased and abducted an individual who had been lured to the apartment under the pretense of picking up money owed for a marijuana sale.  Byrd and his co-conspirators then ordered this individual to drive to the home of a marijuana dealer in Montgomery, New York, where Byrd and a co-conspirator, armed with guns, tied up the marijuana dealer and demanded money and valuables.  Byrd and his co-conspirator then stole twelve pounds of marijuana and approximately $20,000 in cash, among other things.

Byrd was later charged in separate indictments for the two home invasion robberies.

In Indictment 21-cr-441, Byrd was charged in connection with the November 14, 2019, Mt. Hope home invasion robbery as follows:  Count One—conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; Count Two—committing and threatening physical violence to any person or property in furtherance of a plan or purpose to commit robbery, in violation of 18 U.S.C. § 1951; and Count Three—brandishing a firearm in furtherance of a crime of violence, namely the offense charged in Count Two, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii).  Byrd was also charged in Counts Four and Five of Indictment 21-cr-441 with, respectively, Hobbs Act robbery and brandishing a firearm in furtherance of a crime of violence, in connection with a different home invasion.

In Indictment 20-cr-517, Byrd was charged in connection with the February 19, 2020, Montgomery home invasion robbery as follows:  Count One—conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; Count Two—Hobbs Act robbery, in violation of 18 U.S.C. § 1951; and Count Three—brandishing a firearm in furtherance of a crime of violence, namely the robbery charged in Count Two, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii).

In both cases, Byrd was represented by Steven D. Feldman, Esq., who had been appointed counsel pursuant to the Criminal Justice Act.

On September 10, 2021, pursuant to a plea agreement that encompassed both indictments, Byrd pleaded guilty to Counts One and Two in Indictment 20-cr-517, and Count Three in Indictment 21-cr-441.  The parties stipulated that the Sentencing Guidelines range on Counts One and Two in Indictment 20-cr-517 was 108 to 135 months' imprisonment, and the Guidelines range on Count Three in Indictment 21-cr-441 was the statutory mandatory minimum of 84 months' imprisonment, which had to be imposed to run consecutively to the sentence imposed on the two counts of conviction in Indictment 20-cr-517.  Consequently, the stipulated Guidelines range was 192 to 219 months' imprisonment.  In the plea agreement, Byrd also waived his right to appeal any sentence within or below the stipulated Guidelines range.  In consideration of Byrd's guilty plea, the government agreed to dismiss two additional firearms counts which each carried potential mandatory consecutive sentences of seven years (Count Three in Indictment 20-cr-517 and Count Five in Indictment 21-cr-441).  (Doc. #114-2 in case no. 20-cr-517).

On January 3, 2022, after adopting the parties' stipulated Guidelines range of 192 to 219 months' imprisonment, the Court sentenced Byrd to a total term of imprisonment of 132 months—specifically, 48 months' imprisonment on Counts One and Two in Indictment 20-cr-517, to run concurrently with each other; and 84 months' imprisonment on Count Three in Indictment 21-cr-441, to run consecutively to the sentence imposed on Counts One and Two in Indictment 20-cr-517.  The 132 month sentence, which the Court found to be sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a), constituted a substantial downward variance from the applicable sentencing range of

192 to 219 months' imprisonment, and was also within the range encompassed by Byrd's appeal waiver.

Regarding Byrd's right to appeal, the Court advised Byrd on the record at sentencing as follows:

> [Y]ou have a right to appeal your sentence in each or both of these cases subject to any limitations on that right contained in your plea agreement with the government. The notice of appeal must be filed within 14 days after the entry of judgment. If you do wish to appeal, you must advise your attorney to prepare and file a notice of appeal immediately, or if you request, the clerk will immediately prepare and file a notice of appeal on your behalf.

(Sentencing Tr. at 48-49; Doc. #108 in case no. 21-cr-441).

Byrd did not file an appeal.  Instead, on March 21, 2023,[1] more than fourteen months after judgments of conviction had been entered in both cases on January 4, 2022, Byrd filed the instant Section 2255 motion.  He claims Mr. Feldman failed to file a notice of appeal despite being told to do so, and that had Mr. Feldman filed a notice of appeal, Byrd would have raised on direct appeal his Davis claim and claims that his "sentence was unreasonable [and] exceeded his guideline range and offense base level."  (Motion at ECF 3).

Byrd contends he instructed Mr. Feldman on the day of sentencing to file an appeal "because he believed his sentence was unreasonable and that he received too much time for his 924(c) because of his conduct in the offense including the fact that he got 4 years for an Hobbs act robbery."  Byrd also contends Mr. Feldman said Byrd was "totally correct about his sentence being unreasonable," and "promised . . . he would file a direct appeal."  Byrd further contends he called Mr. Feldman's office "the same week he was sentenced to make sure that his direct appeal

---

[1]     Under the "prison mailbox rule," accepting as true Byrd's assertion that he handed the petition to prison officials for mailing on March 21, 2023, the petition is deemed filed as of that date.  See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001).

was filed," and that he only learned in February 2023 that no appeal had been filed when he called the clerk of court to find out the status of his appeal.  (Motion, at ECF 5).  Byrd does not claim he contacted Mr. Feldman about the status of his appeal during the fourteen month period between when he supposedly told Mr. Feldman to file the appeal and when he filed the instant motion.

Mr. Feldman, who is well known to the Court as a highly competent and ethical defense attorney with decades of federal criminal practice experience, flatly contradicts Byrd's contentions in an affidavit filed in response to the motion.  According to Mr. Feldman, Byrd did not direct him to file a notice of appeal on the day of sentencing or at any time thereafter; Mr. Feldman did not tell Byrd his sentence was unreasonable; Mr. Feldman did not promise to file a notice of appeal; and Byrd did not call Mr. Feldman's office the week of his sentencing to direct or confirm the filing of an appeal.  (Feldman aff., ¶ 8; Doc. #114-3 in case no. 20-cr-517).

In his affidavit, Mr. Feldman also states that, in accordance with his standard practice, he sent Byrd a letter on or about January 4, 2022, enclosing the signed judgments of conviction and the applicable restitution and forfeiture orders.  Mr. Feldman also says his letter confirmed, based on his conversations with Byrd, that Byrd did not wish to file an appeal, and informed Byrd that if he changed his mind he should notify Mr. Feldman immediately so Mr. Feldman could prepare and file a notice of appeal on Byrd's behalf.  According to Mr. Feldman, Byrd "at no point directed me to file an appeal."  (Feldman aff., ¶ 9).

**DISCUSSION**

I.   <u>Davis Claim</u>

Byrd asserts his Section 924(c) conviction on Count Three of Indictment 21-cr-441 is unconstitutional under <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019).  In <u>Davis</u>, the Supreme

Court held that conspiracy to commit Hobbs Act robbery did not qualify as a "crime of violence," as that term is defined in 18 U.S.C. § 924(c)(3)(B), the so-called "residual" clause. Byrd argues that the predicate offense for his Section 924(c) conviction was conspiracy to commit Hobbs Act robbery, and therefore his Section 924(c) conviction must be vacated.

Byrd is incorrect. The predicate for his Section 924(c) conviction was not conspiracy to commit Hobbs Act robbery, but rather committing and threatening physical violence to any person or property in furtherance of a plan or purpose to commit the November 14, 2019, robbery in Mt. Hope, New York, as described in Count Two of Indictment 21-cr-441. This offense is clearly a crime of violence within the so-called "elements" clause, namely a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Davis did not address the elements clause. Therefore, even if timely,[2] Byrd's Davis claim is without merit.

II.    Ineffective Assistance of Counsel

Even if timely,[3] Byrd's ineffective assistance of counsel claim is also without merit.

---

[2]    Under the Antiterrorism and Effective Death Penalty Act of 1996, a Section 2255 motion must be filed no later than one year after "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Here, the judgment of conviction was entered on January 4, 2022. No appeal was taken. Thus, the judgment became final fourteen days after the entry of judgment—January 18, 2022—the date on which the time for filing a direct appeal expired pursuant to Fed. R. App. P. 4(b). See Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005). Byrd's Section 2255 motion is untimely because the petition was filed on March 21, 2023, which is more than one year after the judgment of conviction became final on January 18, 2022. Byrd nevertheless contends his attorney's alleged failure to file a timely notice of appeal, as well as other equitable reasons, warrants accepting his Section 2255 motion as timely filed. Because both of Byrd's claims are without merit, the Court need not further address the timeliness issue.

[3]    See supra at 6 n. 2.

To prevail under the familiar standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), Byrd must (i) demonstrate that his attorney's performance fell below an "objective standard of reasonableness," meaning it amounted to incompetence under "prevailing professional norms," id. at 688, 690, and (ii) affirmatively prove prejudice, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694, not merely that an error "had some conceivable effect on the outcome." Id. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689. Indeed, this Court will not second-guess strategic or tactical decisions made by counsel. This is because there are many ways to provide effective assistance in a given case. "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." Harrington v. Richter, 562 U.S. 86, 106 (2011) (quoting Strickland v. Washington, 466 U.S. at 689).

Byrd claims that after he was sentenced, he directed his attorney to file a notice of appeal on his behalf, but that Mr. Feldman failed to do so. When a criminal defendant's attorney fails to file a direct appeal after his client tells him to do so, the attorney's conduct is professionally unreasonable and prejudice is presumed; the defendant is entitled to a new appeal notwithstanding that he has not shown any likelihood of success on appeal and has waived his right to appeal and collaterally attack his conviction. See Campusano v. United States, 442 F.3d 770, 775 (2d Cir. 2006); Garcia v. United States, 278 F.3d 134, 137 (2d Cir. 2002) (citing Roe v.

Flores-Ortega, 528 U.S. 470, 484 (2000)).  Importantly, however, a petitioner must first

demonstrate he specifically instructed his attorney to file a notice of appeal.  Campusano v.

United States, 442 F.3d at 773; accord, Kajtazi v. United States, 2018 WL 3962932, at *3

(S.D.N.Y. Aug. 17, 2018).

 For the following reasons, the Court finds that Byrd has failed to show he specifically

instructed Mr. Feldman to file an appeal.  The ineffectiveness of counsel claim is therefore

denied.

 "When an attorney's affidavit credibly contradicts a habeas petitioner's ineffective

assistance of counsel claim, the Court is entitled to deny the petition without holding an

evidentiary hearing."  Berrios v. United States, 2009 WL 2226757, at *3 (E.D.N.Y. July 23,

2009) (citations omitted).  Here, Mr. Feldman—an experienced criminal defense attorney well-

known to this Court for his competence and ethical conduct—submitted an affidavit in which he

states that Byrd never requested or directed Mr. Feldman to file a notice of appeal.

 Moreover, Mr. Feldman credibly contradicts Byrd's implausible claims that Mr. Feldman

told Byrd his substantially below-Guidelines sentence was "unreasonable," especially

considering that as a result of Byrd's negotiated guilty plea, he avoided convictions on two

additional Section 924(c) charges that carried consecutive mandatory minimum sentences of

seven years each.  Given that Byrd's sentence was 132 months' imprisonment and he had waived

his right to appeal a sentence of 219 months or less, Byrd's claim that Mr. Feldman said he

would file an appeal is likewise implausible.

 Mr. Feldman also explained that in accordance with his standard practice, he sent Byrd a

letter the day after sentencing confirming, based on his conversations with Byrd, that Byrd did

not wish to file an appeal, and informing Byrd that if he changed his mind he should notify Mr.

Feldman immediately so Mr. Feldman could prepare and file a notice of appeal on Byrd's behalf. Given that Mr. Feldman did not file a notice of appeal on Byrd's behalf, Mr. Feldman's assertion that Byrd neither called his office in the week following sentencing or otherwise responded to Mr. Feldman's letter is also credible.

Against this backdrop, the Court rejects Byrd's self-serving claim that he directed the filing of an appeal and then waited until February 2023—more than a year after the Court explicitly advised him of his right to appeal and during which he had no attorney contact—to call the clerk of court to inquire about his appeal.  That thirteen month passage of time corroborates Mr. Feldman's credible assertion that he was not, in fact, directed to file a notice of appeal and supports the conclusion that Byrd never actually requested that Mr. Feldman file an appeal.  See Roberts v. United States, 2014 WL 4199691, at *5 (E.D.N.Y. Aug. 22, 2014) (dismissing claim that attorney failed to file appeal after being requested to do so when petitioner waited thirteen months to raise the issue); Colon v. United States, 2010 WL 1644260, at *6 (S.D.N.Y. Apr. 21, 2010) (dismissing same claim after petitioner waited eleven months to file petition).  Likewise, despite the fact that at sentencing the Court specifically advised Byrd that a notice of appeal had to be filed within fourteen days after the entry of judgment and that, at Byrd's request, the clerk of court would immediately prepare and file a notice of appeal on his behalf, Byrd never made such a request, and, indeed, did not raise the issue of his desire to file an appeal until more than a year later.

Under these circumstances, there is no reason to hold any further hearing to determine whether Byrd in fact instructed Mr. Feldman to file an appeal.  In light of this Court's intimate familiarity with the underlying criminal proceedings, the futility of any appeal, Byrd's delay in filing the instant motion, and the fact that Byrd's "highly self-serving and improbable assertions"

are contradicted by Mr. Feldman's credible affidavit and the record of the sentencing proceeding,

no purpose would be served by expanding the record.  See Chang v. United States, 250 F.3d 79,

86 (2d Cir. 2001); accord, Padin v. United States, 521 F. App'x 36, 38 (2d Cir. 2013); Raysor v.

United States, 647 F.3d 491, 494 (2d Cir. 2011); Kajtazi v. United States, 2018 WL 3962932, at

*4.

## CONCLUSION

Petitioner Dorian Byrd's motion under 28 U.S.C. § 2255 is DENIED and the petition is

DISMISSED.

As petitioner has not made a "substantial showing of the denial of a constitutional right,"

a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order

would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose

of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk is instructed to close case nos. 23-cv-2584 and 23-cv-2585.

Chambers will mail a copy of this Order to petitioner at the following address:

Dorian Byrd, Reg. No. 06420-509
FCI Beckley
Federal Correctional Institution
P.O. Box 350
General & Legal Mail
Beaver, WV  25813

Dated:  November 28, 2023
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

10